**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONNIE HANKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CV1999 HEA |
| | ) | |
| TERRY RUSSELL, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## <u>OPINION, MEMORANDUM AND ORDER</u>

This matter comes before the Court on Defendant Russell's Motion for Summary Judgment, and the Corizon Defendants' Motion for Summary Judgment. Plaintiff opposes both Motions. For the reasons set forth below, both Motions are granted.

### Background

Plaintiff brings this action under 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at Eastern Reception Diagnostic and Correctional Center ("ERDCC"). Corizon, Inc. (Medical Service Provider); Tonya Long (Dentist); Marvin Bohnenkamp (Dentist); Mark Bradshaw (Dentist) (collectively, the "Corizon Defendants"); and Terry Russell (Warden, ERDCC)  were named as Defendants in Plaintiff's original Complaint. In Plaintiff's Amended Complaint, he joined as Defendants Shanta Pribble (Nurse); David Mullen (Medical Director); Todd Renshaw (Assistant Director of Nursing); Ernest Jackson (Missouri Director of Dental Services of Corrections); Joe Hoffmeister (Deputy Warden); and Stan Jackson (Assistant Warden) (collectively "additional Defendants").[1] Defendant Russell is sued in his official and individual capacity. All other Defendants are sued in their individual capacities only.

---

[1] By Order entered on April 7, 2014, the Court granted Plaintiff's unopposed motion to amend his complaint by joining the additional Defendants. [Doc. No. 33]. The Amended Complaint was entered on the docket the same day. [Doc. No. 34]. Because Plaintiff is proceeding *in forma pauperis*, the Court was responsible for service of process.

Plaintiff alleges that he was denied proper dental care for a period of six years as a result of a combination of Defendants' personal bad acts and deliberate indifference to his serious medical needs, as well as their reliance on unconstitutional "customs, practices, and policies." Plaintiff further asserts that Defendant Russell failed to train and properly supervise Defendants regarding Plaintiff's need for dental services. Plaintiff also brings this action against Corizon, asserting that it acted according to an unconstitutional policy in denying proper dental care.

## Plaintiff's Dental History

According to Plaintiff's Amended Complaint, Corizon maintains a policy which only permits inmates to receive new dentures in five-year intervals. Plaintiff entered ERDCC in 2004 with partial upper and partial lower dentures he had worn since 1988. In June 2005, he received new full upper and partial lower dentures. Thereafter, he began submitting Medical Service Requests ("MSRs") regarding holes in his upper denture and issues with decayed and fractured teeth. On February 6, 2007, Plaintiff filed an MSR stating that he was "[h]aving problems eating with false teeth," and that he was experiencing rubbing, blisters, and raw spots. [Doc. No. 83-4, CMS No. 23]. Plaintiff filed an MSR on March 15, 2007, and had an appointment the same day, but left without being seen. [Doc. No. 67-1, CMS 162]. It is unclear if the MSR and appointment were dental related.[2] Plaintiff filed another MSR on April 19, 2007, requesting to see a dentist. [Doc. No. 67 at ¶ 19] [citing Doc. No. 67-1, CMS 162].

---

*See* 28 U.S.C. § 1915(d). However, through an administrative oversight, the Court did not order the Clerk to issue process upon the Amended Complaint as to the new Defendants. Likely as a result of the Court's administrative oversight, none of the added Defendants have filed responsive pleadings to the Amended Complaint. As discussed below, the Court will dismiss the claims against these Defendants, pursuant to 28 U.S.C. § 1915(e).

[2] Plaintiff's medical records reveal several instances of MSRs being filed, appointments being made, appointments being missed due to Plaintiff's "no shows," or appointments being cancelled due to staffing issues. Plaintiff claims in his various filings that the "no shows" were reflective of his being denied medical passes and/or being turned away at the front desk of the medical department.

## A.    Defendant Long

Plaintiff was seen by Defendant Long on April 23, 2007. [Doc. No. 67-1, CMS 162].
According to medical records maintained by the Missouri Department of Corrections
("Plaintiff's medical records"), Plaintiff reported that he needed his dentures adjusted and that
his tooth 21 was sensitive. [*Id.*]. The medical records state that Doctor Long assessed several
specific issues with Plaintiff's tooth 21 and upper denture, and treated them through adjusting the
denture, using a desensitizing agent, and placing a bonding agent on tooth 21. [*Id.*].

Plaintiff filed an MSR on October 25, 2007, complaining that he needed his denture
replaced because there was a hole worn through it. [Doc. No. 83-4, CMS 20]. Plaintiff again
filed an MSR on January 27, 2008, complaining that he needed his denture repaired or replaced
because there was a hole worn through it. [*Id* at CMS 21].[3] Plaintiff filed another MSR on
August 14, 2008, which stated "I have a hole worn in my denture. This MSR is about the 6th
one, I have not seen a dentus [sic] yet. I can't eat because the food goes through the hole into the
gum." [*Id.* at CMS 19]. Plaintiff submitted another MSR on August 22, 2008, requesting a
consult and an exam. [Doc. No. 67 at ¶ 23] [citing Doc. No. 67-1, CMS 218].

According to Plaintiff's medical records, he was seen on August 28, 2008 by non-
defendant Doctor Bellon. [Doc. No. 67-1, CMS 218]. Plaintiff reported that he had a hole in his
upper denture. [*Id.*]. Doctor Bellon assessed the issue as repairable, filled the hole with hard
reline material, and advised Plaintiff to file an MSR if he wanted new dentures. [*Id.*].

Plaintiff filed an MSR on July 5, 2009, complaining that he had a hole in his upper
denture, that he needed new dentures, and that he was having problems eating. [Doc. No. 83-4,
CMS 18]. In another MSR, filed on September 7, 2009, Plaintiff complained that he was "having

---

[3] Plaintiff filed an MSR on February 27, 2008, but was listed as a now show at an appointment on February 28,
2008. [Doc. No. 67-1, CMS 202]. On February 28, 2008, Plaintiff filed another MSR, but the appointment scheduled
for February 29, 2008 was cancelled because there was not a dental assistant available. [*Id.*]. Plaintiff filed another
MSR on February 29, 2008, but left the appointment scheduled for the same day without being seen. [*Id.*].

severe pain with a decayed tooth," and that he had "a denture with a hole in it." [*Id.* at CMS 17]. Plaintiff submitted another MSR on September 15, 2009, requesting to see a dentist. [Doc. No. 67 at ¶ 26] [citing Doc. No. 67-1, CMS 251].

Plaintiff was seen by Defendant Long on September 16, 2009. [Doc. No. 67-1, CMS 251]. According to Plaintiff's medical records, he reported there were holes in his upper denture and tooth 22. [*Id.*]. Defendant Long noted in the records that the hole in the upper denture was repaired in 2008, but that the fix "didn't last long." [*Id.*]. Defendant Long further noted: "gross distal caries #22 near pulp." [*Id.*]. Her assessment was that, because Plaintiff received dentures in June 2005, he was not eligible for new dentures until June 2010. [*Id.*]. She further assessed tooth 22 should be extracted. Defendant Long noted that Plaintiff did not want tooth 22 extracted and that he was upset that he was not eligible for new dentures at that time. [*Id.* at CMS 252]. She rendered no treatment. [*Id.*].

On October 9, 2009, Plaintiff was seen by non-defendant Nurse Laird for a self declared medical emergency related to tooth pain. [*Id.* at CMS 252–53]. Nurse Laird assessed potential for trauma, potential for infection, and knowledge deficit. [*Id.* at CMS 253]. Nurse Laird determined that Plaintiff's complaint was non-emergent, and non-urgent. [*Id.*].

In response to an MSR reporting tooth pain filed on December 4, 2009, Plaintiff was seen on December 8, 2009 by non-defendant Doctor Vincenc, who noted that tooth 22 was decayed to the nerve. [*Id.* at CMS 256]. Doctor Vincenc noted that Plaintiff requested to have his five remaining teeth removed and Doctor Vincenc recommended a consult with non-defendant Doctor Bellon. [*Id.*].

Plaintiff filed an MSR on December 10, 2009 to have tooth 22 extracted, but was a no show at an appointment on December 16, 2009. [Doc. No. 67 at ¶¶ 32–33] [citing Doc. No. 67-1,

CMS 257]. Plaintiff again filed an MSR to have tooth 22 extracted on January 6, 2010. [*Id.* at ¶ 34] [citing Doc. No. 67-1, CMS 263].

On January 11, 2010, Plaintiff was seen by non-defendant Doctor Bellon. [Doc. No. 67-1, CMS 263]. Plaintiff reported that he did not want to have his "bad tooth" pulled because it was not hurting, but that he would put in a new MSR to have his remaining lower five teeth extracted and to get new full upper and lower dentures. [*Id.*]. Doctor Bellon noted that Plaintiff only had five other lower teeth remaining, and that they were "decayed and fractured with mobility." [*Id.*]. Doctor Bellon's assessment was that Plaintiff was in need of new full upper and lower dentures. [*Id.*]. Doctor Bellon rendered no treatment, but noted that Plaintiff would submit a new MSR when he was ready for extractions and dentures. [*Id.*]. The next day, January 12, 2010, Plaintiff filed an MSR requesting teeth extraction and new dentures. [Doc. No. 83-4, CMS 16].

Plaintiff filed another MSR on March 11, 2010, requesting to see a dentist, but was listed as a no show at an appointment scheduled for March 15, 2010. [Doc. No. 67 at ¶ 36] [citing Doc. No. 67-1, CMS 266]. In an MSR filed on March 24, 2010, Plaintiff again requested an appointment with a dentist. [*Id.*] [citing Doc. No. 67-1, CMS 267].

On March 25, 2010, Plaintiff was seen by Defendant Long. [Doc. No. 67-1, CMS 267]. Plaintiff requested to have the rest of his teeth removed, and to get new dentures. [*Id.*]. Defendant Long noted severe wear and localized severe caries on Plaintiff's remaining lower teeth. [*Id.*]. She also noted that his upper denture was ill fitting and that he had received full upper and partial lower dentures in 2005. [*Id.*]. Her assessment and plan were to extract Plaintiff's remaining six lower teeth (#s 22, 23, 25, 26, 27, 31) and, after Plaintiff healed, to get him new full upper and lower dentures. [*Id.* at CMS 267–68].

After requesting an appointment for teeth extraction and having it rescheduled due to time constraints, Plaintiff submitted another MSR on April 5, 2010 for teeth extraction. [Doc.

No. 67 at ¶¶ 39–40] [citing *id.* at CMS 268]. At an appointment with Doctor Long on April 6, 2010, Plaintiff reported that he was there to get his teeth removed, and he signed a form entitled, "Consent for the Extraction of Teeth and Other Oral Surgery Procedures," which listed eleven potential complications. [Doc. No. 67-1, CMS 15; Doc. No. 67-2 at 58, lines 17–25]. One of the possible complications listed on the consent form states: "Sharp ridges or bone splinters may form at the end of the socket where the tooth was pulled. Additional surgery or treatment may be needed to smooth these over or to remove them." [Doc. No. 67-1, CMS 15].

Defendant Long removed teeth 22 and 23. [Doc. No. 67-1 at CMS 268–69]. Tooth 23 was extracted via a "simple delivery." [*Id.* at CMS 268]. However, the crown on tooth 22 fractured, and labial soft tissue tore due to undermining. [*Id.*]. The root was delivered with forceps. [*Id.* at CMS 268–69]. Plaintiff alleges that Defendant Long intentionally broke tooth 22. Defendant Long planned to follow up one week later to remove the sutures and extract the remaining four teeth. [*Id.* at CMS 269]. She prescribed medication, including pain killers. [*Id.* at CMS 268].

Plaintiff filed an MSR for his suture removal and remaining teeth extraction on April 14, 2010. [Doc. No. 67 at ¶ 43] [citing *id.* at CMS 269]. At an appointment with Defendant Long on April 19, 2010, Plaintiff reported that he did not want to have the rest of his teeth pulled because they were "good teeth," and he was "doing fine." [Doc. No. 67-1, CMS 269]. Defendant Long observed that the extraction sites for teeth 22 and 23 were healing normally; that the sutures were no longer present; that there were caries on teeth 27 and 31; severe wear and moderate periodontitis; and tooth 31 was supraerupted with inadequate clearance with Plaintiff's upper denture. [*Id.*]. Defendant Long's assessment was that the remaining four teeth should be extracted and, after Plaintiff healed, he would get a new dentures. [*Id.*]. However, Defendant Long noted that Plaintiff did not want his remaining teeth to be extracted and that she informed

him that new dentures (either full upper/full lower, or full upper/partial lower) would not be
fabricated unless the rest of his teeth were removed. [*Id.*]. She reported that Plaintiff "left in a
rush, still disagreeing with tx plan." [*Id.*].

On June 17, 2010, Plaintiff filed an MSR indicating that he needed his dentures replaced.
[Doc. No. 83-4, CMS 14]. Plaintiff filed another MSR on September 14, 2010, requesting an
appointment with a dentist. [Doc. No. 67 at ¶ 46] [citing Doc. No. 67-1, CMS 279]. Plaintiff was
seen by Defendant Long on September 16, 2010, at which time Plaintiff requested new dentures.
[Doc. No. 67-1, CMS 279]. Defendant Long told Plaintiff that she needed to extract his
remaining four teeth before fabricating new full upper and full lower dentures. [*Id.* at CMS 280].
Plaintiff told her that he would not allow her to pull his teeth, and she "explained to patient the
extractions need to be done." [*Id.*]. Plaintiff left and, about an hour later, his functional unit
manager called, informed Defendant Long that Plaintiff did not want her to remove his teeth
because she hurt him, and asked if anyone else could extract the teeth. [*Id.*]. Defendant Long told
the functional unit manager that Plaintiff could submit a new MSR and he would be rescheduled
with a different dentist. [*Id.*].

Plaintiff filed an Informal Resolution Request ("IRR") on September 2, 2010, alleging
that Defendant Long was refusing him dentures by making her own policy, and that Defendant
Long intentionally broke tooth 22 when she removed it. [Doc. No. 67-3, Grievance Record 1, 4].
On October 1, 2010, Defendant Pribble interviewed Plaintiff regarding his IRR and found a lack
of evidence to support his claims that he was denied dental service or that Defendant Long
intentionally hurt him. [*Id.* at Grievance Record 4]. In her response, Defendant Pribble noted that
Plaintiff submitted a new MSR for dental services on September 17, 2010, but that there was
approximately a twelve week wait for non-emergent/non-urgent dental services. [*Id.*]. Defendant
Pribble further advised Plaintiff that the dental department had received his request, that he

would be scheduled accordingly, and that his treatment plan would be determined by his treating dentist. [*Id.*].

Plaintiff submitted an MSR on November 2, 2010 complaining of severe teeth pain and a possible infection, [Doc. No. 83-4, CMS 13], and an MSR on November 15, 2010 complaining of a toothache, [Doc. No. 67 at ¶ 49] [citing Doc. No. 67-1, CMS 285]. Defendant had a nurse encounter with non-defendant Nurse Pyrtle on November 16, 2010 during which he requested to see a dentist. [Doc. No. 67-1, CMS 285]. Plaintiff filed another MSR requesting to see a dentist on December 15, 2010. [Doc. No. 67 at ¶ 51] [citing *id.* at CMS 286].

## B.    Defendant Bohnenkamp

Plaintiff was seen by Defendant Bohnenkamp on December 20, 2010. [Doc. No. 67-1, CMS 286]. Plaintiff requested to have all of his teeth pulled, except for tooth 31, which was a "good tooth," that never gave him trouble. [*Id.*]. Defendant Bohnenkamp discussed Plaintiff's options of either having a full or partial lower denture with tooth 31 as the only natural tooth, and the advantages and disadvantages of each course of action. [*Id.*]. Plaintiff expressed a preference to have a partial lower denture. [*Id.*]. Plaintiff was scheduled for a composite resin on tooth 31 and extractions of his three remaining teeth (#s 25–27). [*Id.*].

On December 28, 2010, Plaintiff filed an MSR to have teeth 25, 26, and 27 extracted and a composite resin applied to tooth 31. [Doc. No. 67 at ¶ 53] [citing *id.*]. On January 4, 2011, after again presenting Plaintiff with his options, and Plaintiff again expressing a preference for a full upper denture and partial lower denture, Defendant Bohnenkamp extracted teeth 25, 26, and 27, and applied a composite resin to tooth 31. [Doc. No. 67-1, CMS 286]. Defendant Bohnenkamp removed the sutures on January 11, 2011. [*Id.*]. He noted that the extraction sites were healing "OK." [*Id.*].

On March 17, 2011, Plaintiff filed an MSR complaining that he had "tooth fragments" in his gums that needed to be taken out. [Doc. No. 83-4, CMS 9]. In response to an MSR Plaintiff filed on April 4, 2011 for a follow up on his dentures and extractions, Plaintiff was seen by non-defendant Doctor Fazili on April 5, 2011. [Doc. No. 67 at ¶¶ 57–58] [citing Doc. No. 67-1, CMS 309]. Plaintiff complained of sharp bony areas where teeth 25, 26, and 27 had been removed. [Doc. No. 67-1, CMS 309]. Doctor Fazili found that the extraction sites were completely healed and that there were "sharp bony spicules (crest of ridge) in relation to #s 25 and 25." [*Id.*]. His plan was for Plaintiff to have an alveoloplasty prior to having impressions made for his dentures. [*Id.*].

Plaintiff filed an MSR requesting an Alveoloplasty on June 21, 2011. [Doc. No. 67 at ¶ 59] [citing *id.* at CMS 313]. Defendant Bohnenkamp saw Plaintiff on June 22, 2011 and, according to Plaintiff's medical records, Plaintiff reported that the sharp edges at the extractions sites had smoothed over the previous two months and were now longer bothering him. [Doc. No. 67-1, CMS 313]. Plaintiff contends that he "did not advise anyone that the sharp bonnie [sic] objects had smoothed over and no longer bothered him." [Doc. No. 83 at 2]. According to Plaintif"s medical records, Defendant Bohnenkamp found that the extractions sites had healed and that Plaintiff was ready for impressions to be made for his upper and lower dentures. [Doc. No. 67-1, CMS 313].

In August and September 2011, Defendant Bohnenkamp took Plaintiff's final impressions for his dentures as well as a wax bite registration. [*Id.* at CMS 327, 330]. On October 11, 2011, Defendant Bradshaw fitted Plaintiff for his dentures and reported that Plaintiff was satisfied with the look and fit. [*Id.* at CMS 335]. The dentures were sent to the lab for final processing. [*Id.*]. Plaintiff received his new dentures on November 9, 2011, and Defendant

Bradshaw reported that Plaintiff was happy with the look and fit after Defendant Bradshaw adjusted a slight "tight" feeling on the lower left. [*Id.* at CMS 340].

## C. Defendant Bradshaw

Plaintiff filed an MSR on November 14, 2011, complaining that he needed his new dentures worked on and ground down in several places because they were rubbing on his gums and causing blistering. [Doc. No. 83-4, CMS 5]. Plaintiff filed another MSR on November 28, 2011, indicating that he needed to see a dentist, and was seen by Defendant Bradshaw the same day. [Doc. No. 67 at ¶¶ 65–66] [citing Doc. No. 67-1, CMS 341]. According to Plaintiff's medical records, Plaintiff requested an adjustment to his lower denture, and Defendant Bradshaw adjusted it. [Doc. No. 67-1, CMS 341].

Plaintiff submitted an IRR on March 20, 2012, complaining that he had residual bone fragments in his gums he wanted removed. [Doc. No. 67-3, Grievance Record 27]. He received a response from Defendant Renshaw on March 22, 2012 stating that after Plaintiff had complained of sharp bony areas in his gum line following his teeth extraction, he had been scheduled for an alveoloplasty, but that because he subsequently informed the dental staff the sharp bony areas had smoother over, and had not complained about bone fragments in five subsequent visits, no alveloplasty had taken place. [*Id.* at Grievance Record 28]. Defendant Renshaw further advised Plaintiff to file an MSR if he wanted further dental work done. [*Id.*].

Plaintiff filed an MSR on March 26, 2012, complaining that he had tooth fragments that needed to be taken out. [Doc. No. 83-4, CMS 3]. In response to an MSR Plaintiff filed on May 8, 2012 requesting to see a dentist, Plaintiff was seen by Defendant Bradshaw on May 10, 2012. [Doc. No. 67 at ¶¶ 67–68] [citing Doc. No. 67-1, CMS 368]. According to Plaintiff's medical record, he complained that he could not wear his lower denture. [Doc. No. 67-1, CMS 368]. Defendant Bradshaw found that Plaintiff had a knife ridge, which needed a soft reline. [*Id.*].

Plaintiff submitted another IRR on June 11, 2012, complaining that teeth fragments had been deliberately left in his lower gum by Defendants Long and Bohnenkamp when they extracted his teeth. [Doc. No. 67-3, Grievance Record 15]. Plaintiff further relayed that Defendant Bradshaw had informed him that there were not teeth fragments in his gums, but rather bones sticking up where the teeth were pulled. [*Id.*]. Plaintiff stated that Bradshaw had told him he would send him a medical pass for an appointment for a soft reline in the next week or two, but had failed to do so. [*Id.*]. Plaintiff requested to have the bone fragments removed without delay. [*Id.*]. Defendant Renshaw issued a response to the IRR the next day stating that a follow up would be scheduled. [*Id.* at Grievance Record 16].

On July 22, 2012, Plaintiff filed another IRR, again complaining of bone fragments in his gums where his teeth were extracted. [*Id.* at Grievance Record 17]. On September 20, 2012, Defendant Pribble issued a response, stating that Plaintiff was scheduled for a dental follow up appointment on September 25, 2012, and apologizing for the delay. [*Id.* at Grievance Record 18].

Defendant Bradshaw saw Plaintiff for a soft reline on September 28, 2012. [Doc. No. 67-1, CMS 384]. Plaintiff informed Bradshaw that he needed the bony pieces removed, not a soft reline. [*Id.*]. Defendant Bradshaw found flabby tissue around where teeth 26–28 had been, which was pinched by the lower denture. [*Id.*]. He performed a gingivoplasty on Plaintiff. [*Id.*].

Plaintiff filed an IRR on December 4, 2012, complaining that when Defendant Bradshaw performed the gingivoplasty he removed three objects from Plaintiff's lower gum, claimed to remove all of the objects implanted therein, but actually implanted more "foreign objects" into Plaintiff's gums. [Doc. No. 67-3, Grievance Record 21]. Plaintiff requested to have the "foreign objects" removed by an independent dentist immediately. [*Id.*]. Defendant Renshaw met with Plaintiff on January 2, 2013 to discuss the IRR. [Doc. No. 67-1, CMS 394]. Defendant Renshaw advised Plaintiff to follow up with a dental MSR. [*Id.*].

On January 16, 2013, Defendant Bradshaw saw Plaintiff in response to Plaintiff's January 15, 2013 MSR. [Doc. No. 67 at ¶ 70] [citing Doc. No. 67-1, CMS 395]. Plaintiff reported that he could not wear his lower denture because "what you removed has come back." [Doc. No. 67-1, CMS 395]. Defendant Bradshaw observed flabby tissue around the teeth extraction sites for teeth 24–28, and assessed that the tissue needed to be removed. [*Id.*]. Plaintiff was to be scheduled for laser removal of the flabby tissue. [*Id.*].

On January 18, 2013, Defendant Renshaw issued a response to Plaintiff's December 4, 2012 IRR noting that Plaintiff had seen Defendant Bradshaw at his January 16 appointment and that he had been scheduled for laser removal of the troubled areas in his mouth. [Doc. No. 67-3, Grievance Record 22].

At Plaintiff's appointment on March 20, 2013, he told Defendant Bradshaw that he did not want anything to do with him, and refused treatment, stating that he wanted the foreign objects removed from his gums. [Doc. No. 67-1, CMS 406]. Plaintiff testified at his deposition that he refuses to let Defendant Bradshaw realign his dentures or perform a laser procedure.

Plaintiff filed an appeal of his December 4, 2012 IRR on May 15, 2013. [See Doc. No. 67-3, Grievance Record 26]. Defendant Ernest Jackson issued a response on June 12, 2013, encouraging Plaintiff to "rest assured that there [were] no foreign objects in [his] gums," noting that he apparently had an overgrowth of tissue in that area, and advising him that Defendant Bradshaw's diagnosis and treatment plan were well within professional guidelines. [*Id.*].

### Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Woods v. DaimlerChrysler Corp.*,

409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence

of a genuine dispute of material fact and that it is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.

Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d

265 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving

party has met this burden, the nonmoving party may not rest on the allegations in his pleadings

but by affidavit or other evidence must set forth specific facts showing that a genuine dispute of

material fact exists. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d

953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment.'" *Hitt v. Harsco

Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute of fact is genuine when "a reasonable

jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248;

*Woods*, 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must

'substantiate his allegations with sufficient probative evidence [that] would permit a finding in

[his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity

Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62

F.3d 237, 241 (8th Cir. 1995)). "[A] complete failure of proof concerning an essential element of

the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at

323. Review of this motion will proceed accordingly.

### Discussion

Defendant Russell and the Corizon Defendants argue that there are no genuine issues of

material fact with regard to Plaintiff's allegations against them and that they are entitled to

judgment as a matter of law. As discussed below, the Court agrees and accordingly will grant

their respective Motions for Summary Judgment. Further, the Court will dismiss the additional

Defendants, pursuant to 28 U.S.C. § 1915(e).

## A.    Deliberate Indifference Standard

Plaintiff alleges that Defendants' failure to treat his dental needs violated his Eighth

Amendment rights. "A prisoner alleging an Eighth Amendment violation must prove both an

objective and subjective element." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To prevail on his medical deliberate indifference

claim against Defendants, Plaintiff must show he suffered from a serious medical need and

Defendants knew of, yet disregarded, the need. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th

Cir. 2004); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Roberson v. Bradshaw*, 198

F.3d 645, 647 (8th Cir.1999). Allegations of mere negligence in giving or failing to supply

medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In order to

prevail on his claims against Corizon, Plaintiff must establish that there was a policy, custom or

official action that caused an actionable injury. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972,

975–76 (8th Cir. 1993).

## B.    Teeth Pain Issues

The Eighth Circuit has noted that "[t]oothaches can be excruciatingly painful, and dental

care is an important part of proper healthcare." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir.

2007). The Eighth Circuit observed that "a number of [its] decisions have reversed the grant of

summary judgment in favor of prison officials and prison dentists who delayed three weeks or

more in providing dental care for an inmate whose mouth showed obvious signs of serious

infection, such as swelling, bleeding, or pus, and who complained of severe tooth pain." *Id.*

(citing *Moore v. Jackson*, 123 F.3d 1082, 1085-87 (8th Cir. 1997); *Boyd v. Knox*, 47 F.3d 966,

969 (8th Cir. 1995); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994); *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984)).

The Corizon Defendants argue that "Plaintiff's allegations that Corizon and its employees knew Plaintiff . . . had fractured and decayed teeth but failed to provide medical treatment is baseless." [Doc. No. 86 at 10]. The Court agrees.

As painstakingly detailed above, the record is teeming with instances of Corizon and its employees responding reasonably to Plaintiff's complaints of teeth pain and administering, or offering to administer, treatment. Plaintiff has received dental care regularly during his time in ERDCC. In many instances, Plaintiff has refused treatment. *See, e.g.*, Doc. No. 67-1, CMS 251 (plaintiff refusing Defendant Long's recommendation to extract tooth 22, which Plaintiff complained was in pain and Defendant Long observed was decayed); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1999) ("'Medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment,' but a 'mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an eighth amendment claim of deliberate indifference.'" *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1999) (quoting *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990)). Plaintiff has also changed his mind regarding which teeth he would consent to having pulled at various times throughout the dental history detailed above. *See, e.g.*, Doc. No. 67-1, CMS 263; 267–69; CMS 280; 286. Further, Plaintiff has refused to be treated by Defendants Long and Bradshaw. For these reasons, Plaintiff has failed to establish a genuine issue of material fact regarding Defendants' treatment, or attempted treatment, of his teeth pain. The Court finds that Defendants are entitled to judgment as to this issue, as a matter of law.

Further, Plaintiff has presented no evidence to support his baseless allegation that Defendant Long intentionally hurt him when removing two of his teeth. The Court notes well the

widespread understanding that receiving dental care—particularly care that involves removing decayed or infected teeth—is a painful endeavor. Plaintiff has failed to create a genuine issue of material fact with regard to whether Defendant Long's removal of teeth 22 and 23 was done in such a manner as to violate his Eighth Amendment right to be free of cruel and unusual punishment.

## C. Dentures Issues

The Corizon Defendants argue that "Plaintiff's allegations that Corizon and its employees knew Plaintiff had worn out his dentures . . . is baseless." [Doc. No. 86 at 10]. The Court disagrees with this statement. Plaintiff has presented evidence demonstrating that the Corizon Defendants were aware that Plaintiff was experiencing issues with his upper denture, including difficulty eating caused by a hole worn through it. Further, Plaintiff has presented evidence that, pursuant to a policy, Defendant Long refused to treat the issue. However, the Court finds that Plaintiff has failed to create a genuine issue of material fact that the Corizon Defendants were deliberately indifferent to a serious medical need for Eighth Amendment purposes, or that Corizon's alleged five-year denture policy, as applied, was unconstitutional.

Between October 2007 and August 2008, Plaintiff submitted at least three MSRs complaining of a hole in his upper denture and requesting that it be repaired or replaced. [Doc. No. 83-4, CMS 19–21]. In the MSR submitted on August 14, 2008, he stated: "I have a hole worn in my denture. This MSR is about the 6th one, I have not seen a dentus [sic] yet. I can't eat because the food goes through the hole into the gum." [*Id.* at CMS 19]. After Doctor Bellon filled the hole with hard reline material in August 2008, Plaintiff filed another MSR in July 2009, again complaining that he had a hole in his upper denture, needed new dentures, and was having problems eating. [*Id.* at CMS 18]. In another MSR, filed on September 7, 2009, Plaintiff

complained that he was "having severe pain with a decayed tooth," and that he had "a denture with a hole in it." [*Id.* at CMS 17].

Plaintiff filed another MSR in September requesting to see a dentist, and was seen by Defendant Long about a week later. Defendant Long noted that Doctor Bellon repaired the hole in the upper denture in 2008, but that the fix "didn't last long." [Doc. No. 67-1, CMS 251]. Part of Defendant Long's "assessment," was that Plaintiff was ineligible for new dentures until June 2010 because he received dentures in June 2005. [*Id.*]. The Corizon Defendants repeatedly stated that "the actions of Drs. Long, Bohnenkamp and Bradshaw were the result of reasoned medical opinion and judgment." [Doc. No. 86 at 8; Doc. No. 89 at 4]. Further, the Corizon Defendants accurately describe the law as it pertains to medical personnel in prisons exercising their independent medical judgment:

> Moreover, nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. *Escoe v. Wankum*, 21 F.3d 432 (8th Cir. 1994); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any specific type of treatment. *White*, 849 F.2d at 327–28. Prison officials did not violate the Eighth Amendment when, in the exercise of their professional judgment, they refused to implement a prisoner's requested course of treatment. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989). A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1999), cert denied, 506 U.S. 836 (1992).

[Doc. No. 86 at 9].

The Court notes that Defendant Long's "assessment" that Plaintiff would not be eligible for new dentures, pursuant to policy, until June 2010, ostensibly had nothing to do with her independent medical judgment. To the contrary, the record suggests that she was merely following a generalized policy which trumped any medical judgment.

The question then becomes whether Plaintiff, when viewing the facts and inference in the light most favorable to him, has identified evidence in the record establishing a genuine issue of

material fact as to whether the five-year dental policy, as applied by Defendant Long, violated his constitutional rights. The Court finds that he has failed to identify such evidence.

Plaintiff stated in his August 14, 2008 MSR that he could not "eat because the food goes through the hole into the gum." [Doc. No. 83-4, CMS 19]. He also alleges in his partially verified Amended Complaint, which the Court will treat as an affidavit for purposes of summary judgment proceedings,[4] that Defendant Long knew he had a "wore out denture with [a] hole in it where food came through the hole between the gum and denture making bruises, sores, blisters and other injuries resulting in pain and suffering with disability to eat solid foods." [Doc. No. 34 at ¶ 60]. He further alleged that Defendant Long's refusal to make him new dentures deprived him of the "capacity for the enjoyment to eat different foods." [*Id.*].

The Eighth Circuit has held that prison medical personnel's awareness that a toothless prisoner was having trouble chewing certain foods because he was denied dentures was not enough to create a genuine issue of material fact with regard to deliberate indifference to a serious medical need. *Curtiss v. Benson*, 583 F. App'x 598, 598–99 (8th Cir. 2014). The panel in *Curtiss* found "no evidence in the record suggesting that either defendant knew and ignored that Curtiss was in pain, much less severe pain, as a result of his lack of teeth." *Id.* at 599. Here, the only evidence in the record demonstrating pain related to Plaintiff's denture issues, occurred when he chose to eat with the upper denture intact. The panel in *Curtiss* further found that "nothing in the record . . . suggest[ed] that either defendant had information from which she would have drawn the conclusion that because Curtiss had difficulty chewing certain foods without teeth, he was unable to obtain

---

[4] Plaintiff's Amended Complaint consists of his original complaint, followed by further pages bringing allegations against the additional Defendants. All of the allegations from his original complaint against Defendant Russell and the Corizon Defendants, incorporated within the Amended Complaint, were sworn to a notary, [Doc. No. 34 at 24], and, accordingly, constitute a verified complaint, which can be considered the equivalent of an affidavit for purposes of Defendant Russell and the Corizon Defendants' respective Motions for Summary Judgment. *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005). By contrast, Plaintiffs' amended allegations against the additional Defendants are unverified.

adequate nutrition, and Curtiss did not make this claim. *Id.* Similarly here, there is nothing in the record to suggest that Plaintiff was incapable of obtaining adequate nutrition. To the contrary, he states in his Amended Complaint that, because of Defendant Long's failure to fix his dentures, he was unable to eat *solid* foods or enjoy *different* foods.

The panel in *Curtiss*, in finding that the defendants were entitled to qualified immunity, found that "a reasonable medical professional in the position of [either defendant] would not have known that denying Curtiss's request to be provided dentures would violate his clearly established constitutional rights." *Id.* Accordingly, the panel held that "there [was] no genuine issue of material fact on the question whether [Curtiss] [could] show . . . that the defendants were deliberately indifferent to a serious medical need." *Id.* at 598. Accordingly, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact regarding the constitutionality of Defendant Long refusing to fix his dentures prior before five years had passed. Any further delay in Plaintiff receiving dentures was caused primarily by his ever-shifting decisions about which teeth he would consent to having pulled and who he would consent to having treat him.

Although the Court has serious concerns about any policy that appears to replace independent medical judgment with a time limit for treatment, the Court finds that Plaintiff has failed to establish a genuine issue of material fact that Corizon's alleged policy, as applied, caused an actionable injury in violation of his constitutional rights. For this reason, the Court finds that Defendant Corizon is entitled to judgment as a matter of law.

D.      **"Foreign Objects"**

As noted, Plaintiff signed at least one consent form acknowledging that a possible complication of teeth extraction was that "[s]harp ridges or bone splinters may form at the end of the socket where the tooth was pulled," and that "[a]dditional surgery or treatment may be needed to smooth these over or to remove them." [Doc. No. 67-1, CMS 15]. After his teeth extractions, it appears that Plaintiff experienced this complication. He spent the next two years

complaining that teeth fragments remained in his gums from the extractions. In September 2012, Defendant Bradshaw performed a gingivoplasty to remove flabby tissue from the extraction sites. In December 2012, two years after the second extraction, Plaintiff decided that Defendant Bohnenkamp had implanted foreign objects in his gums, and that Defendant Bradshaw, under the guise of removing them during the gingivoplasty, in fact added more foreign objects to his gums. Plaintiff now requests that the Court order the Mineral Area Regional Medical Center to disclose an x-ray it took of Plaintiff's head for an unrelated injury on December 25, 2014, so he can prove there are foreign objects implanted in his gums. The Court will deny the motion.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000), 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

It is unclear when, how, or why Plaintiff developed the belief that the Corizon Defendants implanted foreign objects in his gums—as opposed to his former belief that teeth fragments were left in his gums, or that he was experiencing the sharp ridges foretold in the consent form he signed—but Plaintiff's outlandish belief does not create a genuine issue of material fact.

The Court finds that Plaintiff's allegations that foreign objects were implanted in his gums are mere fantasy that could lead no reasonable jury to return a verdict in his favor, particularly in light of the clearly explained complication contained in the consent form he

signed prior to having his teeth extracted. Accordingly, the Corizon Defendants are entitled to judgment as a matter of law on this issue.

**E.      Summary Judgment Conclusion**

For the reasons explained above, the Court grants the Corizon Defendants' Motion for Summary Judgment. Because the Court has found that the Corizon Defendants were not deliberately indifferent to a serious medical need, the Court will also grant Defendant Russell's Motion for Summary Judgment, given that Plaintiff's claims against Defendant Russell were predicated on the same underlying factual allegations.

**F.      Additional Defendants**

The Court will dismiss the additional Defendants Pribble, Mullen, Renshaw, Ernest Jackson, Hoffmeister, and Stan Jackson, pursuant to 28 U.S.C. § 1915(e). Plaintiff's allegations as to these Defendants, stemming from their actions in Plaintiff's grievance proceedings, are frivolous or fail to state a claim, or both.

**Conclusion**

Based on the foregoing analysis, the Court grants the Corizon Defendants' Motion for Summary Judgment, grants Defendant Russell's Motion for Summary Judgment, and dismisses Defendants Pribble, Mullen, Renshaw, Ernest Jackson, Hoffmeister, and Stan Jackson.

Accordingly,

**IT IS HEREBY ORDERED** that the Corizon Defendants' Motion for Summary Judgment [Doc. No. 65] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Russell's Motion for Summary Judgment [Doc. No. 70] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Summary Judgment [Doc. No. 87] is **DENIED**.

**IT IS FURTHER ORDERED** that the Corizon Defendants' Motion to Strike Plaintiff's Motion to Dismiss Summary Judgment [Doc. No. 89] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Subpoena Duces Tecum [Doc. No. 105] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay [Doc. No. 108] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Shanta Pribble, David Mullen, Todd Renshaw, Ernest Jackson, Joe Hoffmeister, and Stan Jackson are **DISMISSED**.

An appropriate Judgment and Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 26th day of February, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE